Belknap,
Oct. 4, 1901.

### PRESCOTT *v.* LACONIA CAR COMPANY WORKS.

A motion to direct a verdict is properly denied when there is a conflict of testimony upon material points in issue.

CASE, for personal injuries alleged to have been received through an unsuitable, defective, and dangerous lubricator connected with an engine maintained and operated by the defendants.   Trial by jury, resulting in a disagreement.   Transferred from the November term, 1900, of the supreme court by *Chase,* J.

The plaintiff worked for the defendants from July 9, 1898, to January 18, 1899, firing a boiler and running a stationary engine. He is forty-two years of age, and possessed of average intelligence. He had previously fired a much smaller boiler and run a much smaller engine for another person during parts of two winters. Attached to the pipe which conducted the steam from the boiler to the defendants' engine there was an appliance called a " cylindrical lubricator."   The attachment was at a point where the steam pipe runs perpendicularly, and was about five or six feet above the floor of the engine room, and near the cylinder of the engine. The office of the appliance was to supply oil to the interior of the cylinder and lubricate the surfaces with which the piston comes in contact in its movements.   A smaller and somewhat similar lubricator was attached to the engine which the plaintiff ran previously.

January 18, 1899, while the plaintiff was in the performance of his duty under his employment at Laconia, he noticed that oil was not passing through the sight-feed, and thereupon he shut off the lubricator and looked it over for three to five minutes to ascertain the trouble. He then opened the valves and stood near for three to five minutes more, watching for the drop of oil to pass, when the sight-feed glass burst, and a piece of the glass struck his eye and destroyed the sight.

The testimony for the plaintiff tended to show that he applied to the defendants for the job; that he told their agent how much he had previously run an engine; that he did not give the agent to understand he was capable of running an engine; that he told him if he would give him the chance, he would try; that possibly the agent thought he could run an engine; and that, so far as the plaintiff knew, the only information the agent had on this subject was what the plaintiff gave him. His testimony also tended to show that he was not acquainted with the mechanism of the lubricator, nor the theory upon which it operated; that when he commenced work for the defendants their agent showed him how to fire the boiler, start and stop the engine, and operate the lubricator, and, among other things, told him that he should open and close its valves, whenever he had occasion to do so, in this order: C first, then B, and finally A ; that at one time, the oil passing too freely, he called the attention of the defendants' agent to it, who looked the lubricator over but discovered no trouble with it; that the agent told him to be sure and strain the oil before putting it into the lubricator; that about six weeks before he was injured the glass tube in the sight-feed broke, and the agent furnished him a new one, which he inserted by the direction of the agent, and which was the one that caused his injury; that the agent cut the tube to the right length by inserting a wooden spindle into it and filing around the outside with a three-cornered file, and then breaking it; that this was the only glass tube put into the lubricator during the plaintiff's employment; that when the lubricator was in use, all its metal parts were hot; that he always operated it as he had been directed; that he was ignorant that any special danger attended its use; that in May or June, 1898, the oil got clogged twice in the upper portion of the sight-feed tube and would not pass into the steam pipe; that the attention of the defendants' agent was called to the fact; that at that time the tube was cleaned by opening the valve and passing steam into it.

The plaintiff also called witnesses who, in consequence of study and experience, possessed special knowledge of lubricators and their operation. Their testimony tended to show that the defendants' lubricator was faulty in not having sufficient length of con-

densing pipe; that for an engine of the size of the defendants', located in a room heated and ventilated as theirs was, the pipe should be twelve to fifteen feet long; that a stoppage in the flow of oil would indicate that the column in the condensing pipe was not sufficient; that a hot condition of the cup would indicate that there was not sufficient water; that without sufficient water there is danger that the glass tube will explode; that glass tubes should be cut from the inside instead of the outside; that cutting with a file on the outside and then breaking has a tendency to crack and weaken the tube; that the valves should be opened and closed in this order: B, C, A; that shutting the valves for three to five minutes would have a tendency to cool the contents of the cup and produce a vacuum in it, and then if valve C was opened the tendency would be to force the water from the sight-feed tube back into the cup to fill the vacuum; and that, in their opinion, the bursting of the tube was due to the pressure of steam that came into it in consequence of insufficient counter-pressure from water in the condensing pipe, due to insufficiency in the length of the pipe.

The defendants' evidence tended to show that the engine and lubricator were purchased by the Laconia Car Company, of the Putnam Machine Company, of Fitchburg, Mass., in November, 1894, and were set up by them; that the defendants became the owners of the same in 1898; that the Putnam Company have been in business some seventy years, have put out approximately five thousand engines of different kinds, and bear a first-class reputation as manufacturers of engines; that they purchased the lubricator of the W. P. Phillips Company, of Somerville, Mass., manufacturers of engine and boiler appliances, having an excellent reputation; that, unless otherwise directed, the Putnam Company furnish Phillips lubricators with their engines, and in this way have used some five hundred of them,—seventy-five within the last two years; that the Phillips company have manufactured about forty-five hundred of these lubricators of different sizes since 1880; that they are all alike in plan of construction, and that the parts of those of the same size are interchangeable; that since 1888 the condensing pipes of lubricators of the size and class of the defendants, have uniformly been brass pipe a little more than a quarter of an inch in diameter and twenty inches in length, the same as that of the defendants'; that no complaint was ever made to the Phillips Company or the Putnam Company that the pipe was too short; that before sale the lubricators are tested by a water pressure of 180 to 240 pounds; that the test is made upon the appliance as a whole, including the glass tubes; that the defendants' lubricator was properly attached to the steam

pipe, and was adequate for the purpose designed; that the conditions of heat and ventilation in the defendants' shop did not require a longer condensing pipe; that a heated condition of the lubricator would indicate it was feeding oil fast, but would not indicate danger; that the oil should be strained before use; that impurities in it would tend to clog the lubricator and retard or stop the flow; that the Putnam Company have used two lubricators in all respects like the defendants' for ten years, and have had no trouble from them; that the plaintiff was not to make repairs upon the engine or its appliances, but if he discovered any trouble with them was to report it to the defendants' foreman; that only one glass tube was put into the lubricator while the plaintiff was in the defendants' employ, and that was a half-inch tube, substituted for a brass tube in the gauge.

The defendants also introduced testimony relating to ten lubricators, varying in size from half a pint to a pint and a half, in use in manufacturing and other establishments in Laconia. This evidence tended to show that the condensing pipes of these lubricators were about one half inch in diameter, except in one case it was three eighths of an inch, and that the lengths varied from seven and one half to twenty-eight and three fourths inches. The cross-examination showed that bulbs were connected with the pipes in most, if not all, cases; and the plaintiff's evidence in rebuttal tended to show that in most cases the ten lubricators aforesaid were supplied with from two to three times as much condensing surface, including bulbs, as the defendants' lubricator.

The defendants also introduced the testimony of an employee of the Laconia Company to the effect that he operated the engine and lubricator before the plaintiff did, for a period of about eight months, and that he never had any trouble with the lubricator. Upon cross-examination, he said he thought the condensing pipe got so hot nearly to the bottom as to burn the hand. The defendants also introduced the testimony of witnesses having special knowledge of lubricators and their operation, to the effect that, in their opinion, this lubricator was suitable in character and had sufficient condensing pipe, and that the plaintiff's injury was not due to a faulty construction of the lubricator.

At the close of the evidence the defendants moved that a verdict be directed in their favor. The motion was denied, and they excepted.

*Frank M. Beckford, Walter S. Peaslee,* and *Stone & Shannon,* for the plaintiff.

*Jewell, Owen & Veazey* and *Streeter, Walker & Hollis,* for the defendants.

BLODGETT, C. J.   The reported facts so plainly disclose a conflict of testimony upon material points in issue between the parties that we cannot doubt that the motion to direct a verdict for the defendants was properly denied.   Indeed, if the case made by the plaintiff was not one emphatically for the jury, we should find great difficulty in defining when a plaintiff is entitled to invoke their judgment.

*Exception overruled.*

CHASE and WALKER, JJ., did not sit: the others concurred.